IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.  Criminal No. 3:87cr70

PERNELL S. REDWINE, SR.,

Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Pernell S. Redwine Senior's Motion for Compassionate Release Pursuant to Section 603(b) of the First Step Act (the "Motion"). (Mot. 1, ECF No. 5.) The United States responded in opposition, (the "Opposition"). (ECF No. 12.) Redwine replied, (the "Reply"). (ECF No. 16.) The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons articulated below, the Court will grant the Motion and reduce Redwine's sentence to time served.

### I. Background

On April 12, 1988, Redwine pled guilty to armed bank robbery in violation of 18 U.S.C. § 2113(a) & (d). (Presentence Report "PSR" 1, ECF No. 5-14.) The PSR describes the conduct underlying Redwine's offense, which occurred on January 16, 1987.[1] (*Id.* 3.) Redwine, then twenty-eight-years old, entered the Heritage Savings and Loan Association with a revolver and proceeded to steal several thousand dollars:

> At approximately 1:30 pm, an unidentified black male, wearing a ski mask ran in a crouched position into the bank lobby from a hallway leading to the rear door of

---

[1] Because the offense occurred on January 16, 1987, the Sentencing Reform Act of 1984 does not apply to Redwine. (PSR 3.) This timing impacts how the Court may address the instant Motion and the procedural vehicle under which Redwine may proceed.

> the bank. He carried a revolved in his right hand and proceeded to the teller station operated by Amy L. Gretzler. The robber looked around, then shouted, "This is a hold-up; everybody get back; get your hands up." The robber held the revolver at arms length but not pointed at anyone in particular. The robbery then vaulted the counter yelling, "get back, put your hands up, get back or I'll kill you." Then the robber turned to the teller station, operated by Gretzler, and pulled open the top drawer and took the money from it, placing it in a cloth bag. He then turned to the drive-in teller station and pulled open both drawers while still holding the gun. The only thing in the drawers was a large box of lollipops.
>
> The robber then proceeded to the teller station operated by Carol Murray. He found the lower drawer locked. He then pulled open the top drawer and took the money from it. The robber ordered Murray to open the bottom drawer which she did. The robber took the money from the drawer and put it into the cloth bag.
>
> The robber then proceeded to the teller station, operated by Annette Logan, took the money from both the top and bottom drawers, and put it into the bag. He then turned around, walked back into the gate, located between Gretzler's station and the vaults, and found it locked. He jumped over the gate and left through the rear door saying, "Don't anyone follow me, I'll kill you."
>
> The FBI had Gretzler, Murray and Logan each look at a set of six (6) different photographs depicting six (6) different black males. Each teller picked Photo Number 4, that of Pernell Redwine, as the individual looking most like the bank robber. Each teller picked Photo Number 4 because of the eyes.
>
> In a statement to FBI Special Agents, Wayne Waddell and James G. Lee, the defendant admitted his involvement in the offense.

(*Id.* 3–4.) Heritage Savings and Loan Association suffered a financial loss of $6,715. (*Id.* 4.)

According to the PSR prepared prior to sentencing, Redwine had "never worked and readily admits that he supported himself by robbing banks and living on the proceeds he gained from these robberies." (*Id.*) Redwine had several other convictions before he robbed Heritage Savings and Loan, including convictions for robbery by force, malicious wounding, and arson. (PSR 7–11.)

The Sentencing Guidelines "as set forth in the U.S. Parole Commission Rules and Procedures Manual," calculated an offense severity category of five and a salient factor of three. (PSR 18.) The PSR stated that "[i]f sentenced to a term of incarceration exceeding one year, it is

2

likely that the defendant will serve between 60 and 72 months before being paroled. This estimate assumes that the defendant will exhibit satisfactory behavior and performance while incarcerated, and it is not binding on the U.S. Parole Commission."[2] (*Id.*) The PSR recommended a Guideline range of 262 months to 327 months' imprisonment. (*Id.* 27.)

On May 17, 1988, this Court sentenced Redwine to twenty-five years' imprisonment, "consecutive to any sentence heretofore imposed on [defendant]." (ECF No. 4.) Around the same time, a state court judge sentenced Redwine to a lengthy term of imprisonment in the Virginia Department of Corrections. (PSR 9–10.) As a result, Redwine did not begin serving his federal sentence until March 2020, when the Virginia Parole Board granted him geriatric parole. (ECF No. 5–2.)

Because Redwine began serving his twenty-five year sentence roughly eight months ago, he is not scheduled for release until February 21, 2037. *See* Bureau of Prisons, *Fed. Inmate*

---

[2] The Sentencing Reform Act of 1984 abolished parole, but that Act does not apply to Redwine because he committed his offense before November 1, 1987.

Before November 1, 1987, the Parole Commission and Reorganization Act of 1976 (PCRA) governed the terms of federal sentences. Pub. L. No. 94–233, § 2, 90 Stat. 219 (codified as amended at 18 U.S.C. §§ 4201–4218 (1982) (repealed 1984, effective 1987)). The PCRA empowered the Parole Commission to evaluate prisoners' behavior and to award them early release on the basis of positive institutional adjustment. *See* 18 U.S.C. § 4206. Dissatisfied with this system, Congress passed the Sentencing Reform Act of 1984 ("SRA"). The SRA became effective on November 1, 1987, when it repealed and replaced the PCRA. Pub. L. No. 98–473, §§ 212, 218, 98 Stat.1987, 2027 (codified as amended at 18 U.S.C. §§ 3551–59, 3561–66, 3571–74, 3581–86, 28 U.S.C. §§ 991–98 (1988)). Under the SRA, parole was to be abolished, the Parole Commission was to be phased out, and prisoners were to serve uniform sentences under sentencing guidelines. *See id.* On December 7, 1987, thirty-six days after the SRA became effective, Congress amended the Act to clarify that the terms of the PCRA would continue to govern the sentences of those prisoners sentenced prior to the effective date of the SRA, and extended the life of the Parole Commission to administer those sentences. Sentencing Act of 1987, Pub. L. No. 100–182, § 2(b)(2), 101 Stat. 1266 (1987). Because Redwine committed his offense in January 1987, prior to the effective date of the SRA, Redwine remains eligible for parole.

3

*Locator*, https://www.bop.gov/inmateloc/. Although Redwine has been designated to USP Beaumont, he remains housed in Northern Neck Regional Jail during the COVID-19 pandemic. (Mot. 21.)

On June 8, 2020, Redwine filed a *pro se* Motion for Compassionate Release. (ECF No. 1.) In his *pro se* Motion, Redwine asked the Court to appoint him an attorney for assistance in requesting compassionate release because he has "prostate cancer and glaucoma in [his] remaining right eye, and [has] lost [his] left eye." (*Id.*) On September 2, 2020, Counsel filed a Motion for Compassionate Release on Redwine's behalf. (Mot., ECF No. 5.) Counsel avers that Redwine served approximately "33 years of a substantial sentence for armed bank robbery with the Virginia Department of Corrections ('VADOC') before being granted geriatric parole on March 26, 2020." (*Id.* 1.) Counsel notes that Redwine was "taken into federal custody to begin serving a 25-year federal sentence for armed bank robbery" the day VADOC released him from state custody. (*Id.*) Redwine turns 62 years old next month, and "he suffers from prostate cancer and severe glaucoma, which has cost him the use of his left eye." (*Id.*)

Counsel for Redwine "submitted a request . . . for compassionate release to the BOP regional counsel and the warden of USP Beaumont, but was told that his request could not be evaluated because he is not in BOP custody." (*Id.* 4.) Counsel notes that while Redwine "does not have a BOP record, his geriatric parole grant by the Virginia Parole Board is suggestive of a long history of rehabilitation and compliance throughout his decades in state prison." (*Id.* 3.) Counsel asserts that "[g]eriatric parole is rarely granted in Virginia; between mid-2016 and mid-2018, the Parole Board released just 84 people under geriatric parole, despite having more than 8,000 geriatric inmates." (*Id.* 27 (citing Virginia Parole Board, *About the Parole Board*, available at https:vpb.virginia.gov/about-the-parole-board).)

4

Counsel argues that Redwine "is not a danger to the community." (Mot. 22.) Redwine "acknowledges that his conduct was wrongful and has taken responsibility for it; he has also paid for it by spending over three decades in prison." (*Id.*) Counsel states that Redwine "is unlikely to recidivate for several reasons. He is [older], and it is well-established that recidivism declines with age." (*Id.* 23.) Redwine's significant health conditions also cause him pain and greatly impair his vision. (*Id.* 24.) "He is a 61-year-old in poor health, not a young man in his twenties on a self destructive streak fueled by a serious drug addiction" (*Id.*) Redwine describes his VADOC–approved release plan, which includes living with a family member in Petersburg, Virginia post-release, and resources he began compiling to help him transition out of VADOC custody. (*Id.* 28.)

Counsel contends that the Court can exercise authority under 18 U.S.C. § 3582(c)(1)(A) to reduce his sentence even though his underlying offense occurred in January 1987. (*Id.* 4.) Alternatively, Counsel claims the Court may consider reducing Redwine's sentence under Former Rule 35, which aimed to "give every convicted defendant a second round before the sentencing judge, and afford the judge an opportunity to reconsider the sentence in the light of any further information about the defendant or the case." (*Id.* 9.)

The United States opposes Redwine's request for compassionate release. (*See* ECF No. 12.) The United States agrees that Redwine has established extraordinary and compelling medical reasons to render him eligible for compassionate release. (Opp'n 1, ECF No. 12.) The United States argues, however, that the Court should exercise its discretion and deny compassionate release to Redwine in light of the statutory sentencing factors. (*Id.*) While "details of the crimes are lost to time, [the United States maintains] it is clear that the defendant committed a violent and dramatic bank robbery." (*Id.* 6.) The United States further contends

5

that Redwine "lacked any remorse when he was sentenced by Judge Spencer in May 1988." (*Id.*) The United States observes that Redwine, "a serial robber with separate convictions for malicious wounding, arson, and escape, has served only six months of his current federal sentence for bank robbery." (*Id.* 1.) Moreover, looking to his state prison records, the United States argues that "for the first 25 years of his state sentence, the defendant was a dangerous inmate" because he committed 39 disciplinary infractions during his time in VADOC. (*Id.* 7.) The United States commends Redwine for maintaining a clear record since 2013, but requests that the Court deny the Motion for Compassionate Release. (*Id.*) The United States did not address which procedural vehicle controls the disposition of Redwine's Motion.

## II. Legal Standards: Compassionate Release and Former Rule of Criminal Procedure 35

Because the appropriate legal standard applicable here turns on the date of Redwine's conviction, the Court first reviews two compassionate release statutes and former Rule of Criminal Procedure 35.[3] The Court finds that the two compassionate release statutes do not afford Redwine relief, but the Court may reduce his sentence pursuant to former Rule 35.

In evaluating this issue, the Court recognizes that Redwine committed his offense before November 1, 1987, an important cut-off date for the Sentencing Reform Act (the "SRA"). In 1984, the SRA largely abolished parole and replaced it with supervised release. *See United States v. Kincade*, 379 F.3d 813, 817 n.2 (9th Cir. 2004). This SRA framework provided for supervised release, ("new law"), but did not retroactively apply. Instead, the parole system,

---

[3] In the Opposition, the United States does not question this Court's jurisdiction to consider a sentence reduction for Redwine. Rather, the United States opposes Redwine's release as "inconsistent with [the] nature and circumstances of this bank robbery and the history and characteristics he brings to this Court." (Opp'n 7.)

6

("old law"), continued for individuals like Redwine who committed offenses before November 1, 1987. *See id.*

Relevant here, the Court must consider whether § 3582(c) applies or whether a different statute—18 U.S.C. § 4205(g)—governs Redwine's request for compassionate release.[4] *See* 18 U.S.C. § 4205(g) (providing in relevant part that, "[a]t any time upon motion of the Bureau of Prisons, the court may reduce any minimum term to the time the defendant has served"). In short, Section 4205(g) was part of the parole framework (old law), and through the enactment of the SRA (new law), Congress replaced § 4205(g) with § 3582(c). With this background in mind, the Court reviews the two compassionate release statutes before turning to former Rule 35.

### A. Compassionate Release Pursuant to Section 4205(g)

While the Sentencing Reform Act of 1984 repealed 18 U.S.C. § 4205(g) effective November 1, 1987, that statute remains the controlling law for inmates whose offenses occurred prior to that date. *Wade v. Warden Fairton FCI*, 773 F. App'x 106, 107 n.3 (3d Cir. 2019) ("Section 4205(g) applies to inmates serving 'old law' sentences."). The BOP has also promulgated regulations stating that, for inmates who remain in custody for criminal conduct that occurred prior to November 1, 1987, the original compassionate release statute, § 4205(g),

---

[4] Section 4205(g) provides:

> At any time upon motion of the Bureau of Prisons, the court may reduce any minimum term to the time the defendant has served. The court shall have jurisdiction to act upon the application at any time and no hearing shall be required.

18 U.S.C. § 4205(g). Congress replaced § 4205(g) with § 3582(c)(1)(A) in the Sentencing Reform Act of 1984, Pub. L. No. 98-473. Notably, § 235(a)(1) of the Act provides that—with certain exceptions that are not relevant here—the provisions in the act "shall take effect on the first day of the first calendar month beginning [36] months after the date of enactment [and shall only apply to offenses committed after the taking effect of this chapter]." *Id.* § 235(a)(1).

7

applies. *See* 28 C.F.R. § 572.40 ("18 U.S.C. 4205(g) was repealed effective November 1, 1987 but remains the controlling law for inmates whose offenses occurred prior to that date.").

Significantly, § 4205(g) does not allow an inmate whose criminal offense occurred before November 1, 1987 to bring a compassionate release motion on his or her own behalf. Rather, that right remains solely with the BOP: "[a]t any time upon motion of the Bureau of Prisons, the court may reduce any minimum term to the time the defendant has served." 18 U.S.C. § 4205(g). Permitting only the BOP to bring a motion for "old law" sentences is consistent with the statutory language and history of the two compassionate release statutes.

Based on this statutory language, courts have uniformly held that the current compassionate release statute, § 3582, does not apply to individuals like Redwine whose criminal conduct occurred before November 1, 1987. *See, e.g., United States v. Wilkins*, 426 F. App'x 443, 445 (6th Cir. 2011); *United States v. Stewart*, 865 F.2d 115, 118 (7th Cir. 1988); *United States v. Burgess*, 858 F.2d 1512, 1513–14 (11th Cir. 1988).

### B. Compassionate Release Pursuant to the First Step Act of 2018

As mentioned, § 3582(c)(1)(A) governs compassionate release for inmates who committed an offense on or after November 1, 1987. Although that statute does not apply to Redwine, the Court discusses § 3582 here because Congress recently expanded that provision to make compassionate release more available to more inmates.[5]

---

[5] United States District Court Judge Cynthia M. Rufe recently explained the reasoning behind the 2018 passage of Section 603(b) in the First Step Act:

> In 2018, recognizing the BOP's grim history of approving compassionate release requests, and in an effort to expand the use of compassionate release sentence reductions, Congress passed the First Step Act. The title of the First Step Act's provision that enacted the exhaustion regime is 'Increasing the Use and Transparency of Compassionate Release' and under the new regime, the exhaustion requirement is met if the defendant establishes either (1) that the Bureau of Prisons

8

In 2018, Congress enacted the First Step Act to provide incarcerated individuals the opportunity to directly petition the courts for compassionate release under 18 U.S.C. § 3582(c)(1)(A).[6] Prior to the First Step Act in 2018, the BOP had the sole authority to petition the court for sentence modifications on compassionate release grounds. *Coleman v. United States*, No. 4:17-cr-69, 2020 WL 3039123, at *1 (E.D. Va. June 4, 2020). Following enactment of the First Step Act, criminal defendants may petition courts on their own initiative to modify

---

denied his or her request that it bring a compassionate-release motion and he or she fully exhausted all administrative appeal rights with respect to that denial, or (2) that the warden of the facility took no action on his or her request for the filing of a compassionate-release motion within 30 days of receiving it. Significantly, Congress intended the 30-day exhaustion period to be an accelerant, not a barrier, to judicial review.

*United States v. Tidwell*, No. CR 94-353, 2020 WL 4504448, at *2 (E.D. Pa. Aug. 5, 2020) (internal quotation marks, citations, and alterations omitted). In *Tidwell*, Judge Rufe granted compassionate release to a 62-year-old terminally ill defendant with a life expectancy of less than one year. *Id.* at *1. The defendant in that case had been incarcerated since 1994 for committing numerous crimes, including two counts of murder in furtherance of a continuing criminal enterprise. *Id.*

[6] Section 3582(c)(1)(A) states:

The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

their sentences if "extraordinary and compelling reasons warrant such a reduction." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct. *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)).

The United States Sentencing Commission further defines "extraordinary and compelling reasons."[7] U.S.S.G. § 1B1.13, n.1; *see United States v. Kalivretenos*, No. 1:15-cr-00073, ECF No. 109, at *4 (E.D. Va. May 21, 2020). The Sentencing Commission identifies four instructive categories of extraordinary and compelling reasons that allow for a sentence to be modified: the petitioner's medical condition, age, family circumstances, and other reasons. U.S.S.G. § 1B1.13, n.1 (A)–(D).[8] However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t).

---

[7] The United States Court of Appeals for the Fourth Circuit recently explained in an unpublished decision that "[t]he Sentencing Commission's policy statements . . . control the disposition of [compassionate release motions], and not the BOP program statements, based on Congress' statutory directives." *United States v. Taylor*, No. 20-6575, 2020 WL 5412762, at *1 (4th Cir. Sept. 9, 2020) (citing 18 U.S.C. § 3582(c)(1)(A); 28 U.S.C. § 994(t)).

[8] The United States Sentencing Guideline § 1B1.13 provides that:

Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
(1) (A) extraordinary and compelling reasons warrant the reduction; or
 (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

As a result of the coronavirus outbreak, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, No. 3:19-cr-112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (citing *United States v. Dungee*, No. 7:15-cr-0005, 2020 WL 1666470, at *2 (W.D. Va. Apr. 4, 2020); *United States v. Edwards*, 6:17-cr-0003, 2020 WL 1650406, at *5 (W.D. Va. Apr. 2, 2020)).

### C. <u>Former Rule of Criminal Procedure 35</u>

While the two compassionate release statutes discussed above do not provide the Court with authority to reduce Redwine's sentence, former Rule of Criminal Procedure 35 provides a different avenue for relief.

Relevant to the Motion at bar, former Rule 35 allows courts to exercise their discretion to reduce sentences when appropriate. As the United States Court of Appeals for the Fourth Circuit has explained, when the offense in question was completed prior to November 1, 1987, former Rule 35 provides that a district court may correct or reduce a sentence:

> (a) Correction of Sentence. The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence.
> (b) Reduction of Sentence. A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 120 days after the sentence is imposed or probation is revoked, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation. The court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision.

---

> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

11

*United States v. Winterstein*, 912 F.2d 464, 464 n.2 (4th Cir. 1990). "[T]he disposition of a Rule 35(b) motion is within the sound discretion of the sentencing courts." *United States v. Guglielmi*, 877 F.2d 60 (4th Cir. 1989) (citations omitted); Notes of Advisory Committee on Fed. R. Crim. P. Rule 35 (1983 Amendments) ("[T]he underlying objective of Rule 35 . . . is to "give every convicted defendant a second round before the sentencing judge, and [afford] the judge an opportunity to reconsider the sentence in light of any further information about the defendant or the case which may have been presented to him in the interim."). Accordingly, under "old law," Rule 35 of the Federal Rules of Criminal Procedure granted sentencing courts jurisdiction to correct sentences and wide discretion to reduce sentences.[9] *Winterstein*, 912 F.2d at 464.

### III. Analysis

After due consideration, the Court will exercise its discretion and grant the Motion and reduce Redwine's sentence through former Rule 35.[10]

To the extent Redwine seeks relief pursuant to § 3582(c)(1)(A), the statutes make clear that the SRA applies only to offenses committed after November 1, 1987. Here, Redwine's

---

[9] "Old law" refers generally to sentencing rules before the Sentencing Reform Act of 1984, which amended former Rule 35 and the compassionate release statute contained in § 4205(g). *United States v. Fraley*, 988 F.2d 4, 6 (4th Cir. 1993). "In place of the former rule, the 1984 Act substituted provisions severely restricting a district court's ability to reduce or otherwise correct a defendant's sentence." *Id.*

[10] The United States does not oppose the timeliness of Redwine's motion. As Counsel for Redwine explains, "courts have the power to reduce a defendant's sentence [through Rule 35] so long as relief is sought within 120 days after the sentence is imposed or probation is revoked." (Mot. 9.) "Mr. Redwine's effective parole revocation date could be construed as March 26, 2020, the same day he received parole, nearly walked out of state prison, and was detained by USMS." (Mot. 10.) "In the alternative, Mr. Redwine's effective parole revocation date could be construed as May 11, 2020, which is when he was transferred to NNRJ via a detainer filed with VADOC on that day." (*Id.*) In either event, the United States does not dispute that Redwine filed his Motion within 120 days of a triggering date for Rule 35 purposes.

offense took place in January 1987, prior to the SRA effective date of November 1, 1987. Therefore, the Court may not modify his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A).[11]

Turning to the compassionate release statute that does apply to Redwine, 18 U.S.C. § 4205(g), the Court also cannot grant Redwine's request under that provision. Section 4205(g) mandates that the motion must be brought by the BOP, not Redwine. *See* 28 C.F.R. §§ 571.60, 571.62. Accordingly, the Court does not have the authority, pursuant to either compassionate release statute, to modify Redwine's sentence.

Nonetheless, former Federal Rule of Criminal Procedure 35 permits the Court to grant Redwine the relief he seeks. "Rule 35 is intended to give every convicted defendant a second round before the sentencing judge, and at the same time, it affords the judge an opportunity to reconsider the sentence in the light of any further information about the defendant or the case which may have been presented to him in the interim." *United States v. Ellenbogen*, 390 F.2d 537, 543 (2d Cir. 1968). "It is also essentially a plea for leniency by the defendant." *United States v. Hirschfeld*, 14 F.3d 597 (4th Cir. 1994) (internal quotation marks and citation omitted). "Relief under Rule 35 is vested in the sound discretion of the district court; thus the district court's disposition of the motion is not reviewable on appeal except for a clear abuse of discretion." *Id.* (internal quotation marks and citation omitted).

---

[11] The Court recognizes that the relevant statutes, including the recently enacted First Step Act, created this procedural absurdity and urges Congress to address this conundrum. In a case pending before the United States Court of Appeals for the Ninth Circuit, members of the Legislative Branch, who were the principal drafters of the First Step Act, submitted an amici curiae brief seeking to preserve Congress's "intent to allow pre-Act offenders whose sentences are vacated to benefit from the Act's ameliorative provisions at resentencing." Brief for United States Senators Richard J. Durbin, Charles E. Grassley, and Cory A. Booker as Amici Curiae in Support of the Defendant-Appellant, 2–3, *United States v. Mapuatuli* (9th Cir.) (No. 19-10233).

Here, the Court finds extraordinary and compelling reasons exist to reduce Redwine's sentence from twenty-five years' imprisonment to time served.[12] First, granting Redwine's request for a sentence modification aligns with the purposes of sentencing, such as the need to promote respect for the law, protect the public, and provide just punishment. The U.S. Parole Commission Rules and Procedures Manual under which the Court sentenced Redwine levied harsher penalties than courts often impose today. The record suggests that with the possibility of parole, the Court at sentencing thought it possible that Redwine may have to serve only 60 to 72 months of his 300 month sentence. (PSR 18.)

While Redwine has served only eight months in federal custody, he spent thirty-three years in state prison for offenses similar to the bank robbery in this case. And while this Court earlier contemplated more than five years in federal custody, today's circumstances—COVID, Redwine's extreme ill health, and seven years of violation free conduct while incarcerated—are circumstances the sentencing Court could not have contemplated. In the decades since the Court sentenced him in 1988, he has demonstrated through Virginia's decision to grant him geriatric parole that he has made efforts toward rehabilitation. Moreover, his age and medical conditions, evidenced by Virginia's decision to grant him Parole Approval for Geriatric Terminal Health, make his recidivism risk low, furthering public safety.

Second, Redwine's age and medical conditions—including his prostate cancer, partial blindness, and glaucoma—place him at a higher risk for developing serious complications should

---

[12] Redwine remains under the supervision of the state until May 4, 2053 as part of his release on geriatric parole. (ECF No. 16-2).

14

he be exposed to COVID-19 while incarcerated.[13] The United States recognizes that the current pandemic, together with Redwine's medical conditions and age, constitute extraordinary and compelling reasons sufficient to make him eligible for consideration for a sentence reduction. These circumstances also justify a sentence reduction here.

Third, Redwine has proposed a release plan that will allow him to self-isolate and socially distance upon release. Redwine also enrolled in health insurance through Medicaid as he left VADOC custody. (Mot. 28.) Redwine has expressed interest in enrolling in "Step Up Norfolk," an organization that provides reentry resources to individuals living in Hampton Roads, "and [that organization] has confirmed it will accept Mr. Redwine as a client." (*Id.*)

Redwine's criminal conduct was egregious. His prison records in VADOC showed that he continued with disruptive and dangerous behavior until 2013. But Redwine now displays remorse and personal change. Moreover, the environment where Redwine is serving his sentence has also changed and the unforeseen risk of severe illness or death that accompanies COVID-19 presents a different form of punishment that the sentencing Court did not anticipate decades ago. Considering the current COVID-19 pandemic and Redwine's underlying health concerns and age, the Court finds reducing his sentence to time served warranted here.

---

[13] The BOP reports hundreds of COVID-19 cases among inmates at Beaumont Low FCI and Beaumont Medium FCI, the complex to which Redwine has been designated. *See* Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/.

## IV. Conclusion

For the reasons explained above, the Court will grant the Motion. (ECF No. 5.) An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: Nov. 20, 2020
Richmond, Virginia